**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:20-CV-00178-HBB**

**HEATHER ANN SANDLIN**                                                                                          **PLAINTIFF**

**V.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER[1]**
**SOCIAL SECURITY ADMINISTRATION**                                                            **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Heather Ann Sandlin ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Plaintiff (DN 18) and Defendant (DN 24) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 16). By Order entered April 29, 2021 (DN 17), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

1  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

FINDINGS OF FACT

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on February 9, 2018 (Tr. 11, 272-79, 280-81). Plaintiff alleges to have become disabled on September 23, 2017, as a result of passing out, poor memory, torn muscles in back, depression, and anxiety (Tr. 11, 106, 122, 141, 160). These claims were initially denied on July 9,[2] 2018, and the claims were again denied upon reconsideration on September 21, 2018 (Tr. 11, 103-04, 120, 137, 138-39, 157-58, 176-77). Thereafter, Plaintiff filed a written request for a hearing before an administrative law judge (Tr. 11, 214-15). Administrative Law Judge Neil Morholt ("ALJ") conducted a video hearing from Louisville, Kentucky on July 10, 2019 (Tr. 11, 50-53). Virtually present at the hearing from Bowling Green, Kentucky was Plaintiff and her attorney Mary G. Burchett-Bower (Id.). Tina Stambaugh testified as a vocational expert (Id.).

On January 24, 2020, the ALJ rendered a decision that Plaintiff was not disabled pursuant to the five-step sequential process (Tr. 11-24). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 23, 2017, the alleged onset date (Tr. 14). At the second step, the ALJ determined Plaintiff has the following severe impairments: lumbar degenerative disc disease, peripheral neuropathy, carpal tunnel syndrome, opiate abuse disorder, depression, and anxiety (Id.). The ALJ also found Plaintiff's right ankle sprain/pain, hysteroscopy, dilation and curettage, and endometrial ablation to be nonsevere (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 15).

---

2  The ALJ's decision lists the date of the initial denials as July 11, 2018 (Tr. 11). The Disability Determination and Transmittal documents and the signature of the Disability Adjudicator/Examiner indicate that the date was July 9, 2018 (Tr. 103, 104, 120, 137). When faced with this conflict, the undersigned will use the July 9 date.

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except for the following limitations: Plaintiff can occasionally climb ramps and stairs and stoop; can never climb ladders, ropes, and scaffolds; can frequently balance, kneel, crouch, and crawl; can frequently use hand and foot controls; can frequently handle, finger, and feel bilaterally; can frequently push/pull with the bilateral lower extremities; must avoid frequent exposure to extreme cold, humidity, and vibration; must avoid all exposure to unprotected heights and moving mechanical parts; can understand, remember, and carry out simple, routine 1-4 step tasks; can have occasional interaction with supervisors and coworkers, and no more than superficial, work-related contact with the general public; can make simple workplace decisions in a setting having minimal variations; can sustain concentration, persistence, and pace for extended two-hour periods for the aforementioned tasks, before the need for a regularly scheduled break (Tr. 16-17). The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 22).

After this finding, the ALJ went to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Tr. 23). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since September 23, 2017, the date the application was filed, through the date of the decision, January 24, 2020 (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 269-70). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?
2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?
3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

5

Challenge to Medical Opinions

1. Arguments of the Parties

Plaintiff asserts that "[t]he ALJ fails to give good reasons to discount the findings of consultative evaluator [Dr. Ahmad] Alhourani" (DN 18 PageID 715) (citing Tr. 582-93). Plaintiff's stance is that the ALJ "fail[ed] to consider Dr. Alhourani's documentation of limitation of range of motion of the lumbar spine and positive straight leg raising, both supine and sitting" (Id. at PageID 716) (citing Tr. 587). Additionally, "[o]ther evidence of record supports the findings of Dr. Alhourani in regard to limitation in use of the hands and standing and walking[,]" and the "ALJ fail[ed] to appropriately consider the evidence . . ." (Id.). Plaintiff also criticizes the ALJ's referral to Plaintiff's daily activities as inconsistent with Dr. Alhourani's opinion because the ALJ did not cite to specific activities which were inconsistent (Id. at PageID 717). Finally, Plaintiff posits that the ALJ "should have contacted the source for clarification of the rationale in support of the limitations[,]" as the ALJ was the one who ordered the exam (Id.).

In contrast, Defendant claims "[t]he ALJ also appropriately explained why he did not find examiner Dr. Alhourani's opinion fully persuasive" (DN 24 PageID 748) (citing Tr. 21). "Dr. Alhourani made various normal findings upon physical exam" in addition to various other notable findings, but he "opined that Plaintiff required significant limitations" (Id.) (citing Tr. 582-93). "The ALJ properly noted that the significant limitations proposed by Dr. Alhourani were inconsistent with Plaintiff's reported improvement with no more than conservative treatment in addition to her 'wide array of daily activities' during the relevant period" (Id.) (citing Tr. 19, 21; 20 C.F.R. § 404.1520c(c)(2)). Moreover, the ALJ "referenced Plaintiff's subjective statements at the interview and noted that Dr. Alhourani's assessment . . . [was] based primarily upon

[Plaintiff]'s self-reported abilities" (Id. at PageID 749) (citing Tr. 21, 582) (internal quotations omitted). Additionally, Defendant, in response to Plaintiff's assertion about the ALJ contacting Dr. Alhourani, maintains that "while an ALJ has the duty to develop the record, he has discretion to determine whether additional evidence is necessary" (Id. at PageID 751). Finally, Defendant includes another section in the response solely addressing subjective symptom complaints and contends that "[s]ubstantial evidence supports the ALJ's finding that Plaintiff's subjective statements of disability should not be accepted" (Id. at PageID 753-55).

    2. Discussion

The new regulations for evaluating medical opinions are applicable to Plaintiff's case because she filed her applications after March 27, 2017 (Tr. 11, 272-79, 280-81). See 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[3] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2). Further, the

---

3    In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Notably, under the regulations administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ "did not find [Dr. Alhourani's] opinion fully persuasive, as it is not supported by and is inconsistent with the medical and other evidence of record, including his own physical examination of [Plaintiff]" (Tr. 21). The ALJ then begins to provide examples for this finding:

> For example, the claimant's range of motion was noted to be within normal in terms of: shoulder flexion, abduction, and rotation; elbow flexion/extension, supination, and pronation; wrist dorsiflexion, palmar/flexion, and radial and ulnar deviation; finger flexion; thumb flexion; and cervical flexion, extension and rotation (Exhibit C15F/5). This is inconsistent with his opinion that the claimant would have significant lim[it]ations in reaching and handling. The extent of the limitations regarding sitting, standing, walking, handling, reaching, crawling, crouching, and kneeling are not supported by or consistent with normal motor strength, grip strength, and coordination. Her gait has been abnormal, but she has not required any assistive device for ambulation. Dr. Alhourani also noted that the claimant was able to sit and stand during the interview without any limitations. It appears that his assessment as to the claimant's sitting/standing and walking durational limits is based primarily upon claimant's self-reported abilities (Exhibit C15F/1). In terms of the claimant's overall medical evidence of record, treatment has been wholly conservative with medication, and she has noted improvement with this treatment. She has not required lumbar surgery or carpal tunnel release. Her carpal tunnel treatment appears to have been limited to the use of wrist braces. The claimant engages in daily activities that are not consistent with

8

> the extent of Dr. Alhourani's limitations. There is no impairment to support the limitations regarding humidity, wetness, dust, odors, fumes, pulmonary irritants, and temperature extremes.

(Tr. 21); (*see* Tr. 582, 586).

Plaintiff claims that the ALJ failed to consider Dr. Alhourani's documentation about Plaintiff's limited range of motion of the spine and positive straight leg raising (DN 18 PageID 716) (citing Tr. 587), but this document was considered by the ALJ. In fact, the ALJ's determination cited generally to the 13-page report by Dr. Alhourani and cited the page immediately preceding it (Tr. 21). "An ALJ need not discuss every piece of evidence in the record for [the ALJ's] decision to stand." Rottmann v. Comm'r of Soc. Sec., 817 F. App'x 192, 195 (6th Cir. 2020) (quoting Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004)) (alteration in original). "An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." Id. at 195-96 (quoting Loral Def. Sys.-Akron v. NLRB, 200 F.3d 436, 453 (6th Cir. 1999)). Thus, it is clear that the ALJ considered this information, even if it was not explicitly cited.

As for the other pages cited by Plaintiff (Tr. 533, 536, 564-65, 567, 578, 608, 613), all these pages were cited in the ALJ's opinion, albeit general citations to the collection of pages. Throughout the ALJ's determination, the ALJ cited to the exhibits mentioned by Plaintiff and discussed the medical evidence relating to Plaintiff's hands and wrists, as well as her walking and coordination (Tr. 15-22). Moreover, the ALJ even noted the following findings in the medical records:

> In February 2017, she had decreased reflexes and abnormal gait, but normal motor strength and sensation. She was unable to heel, toe, and tandem walk. In June 2017, she had decreased range of

9

> motion, decreased reflexes, positive straight leg raising, and abnormal gait, but normal motor strength, sensation, and coordination. She was unable to heel, toe, and tandem walk. In October 2017, as well as February and June 2018, she had decreased reflexes and abnormal gait, but normal motor strength and sensation. She was unable to heel, toe, and tandem walk. She had decreased reflexes, decreased sensation, positive Phalen's sign, positive Tinel's sign, and abnormal gait, but normal motor strength in October 2018. She was unable to heel, toe, and tandem walk. In January 2019, she had decreased reflexes, decreased sensation, positive Phalen's sign, positive Tinel's sign, and abnormal gait, but normal motor strength. She was unable to heel, toe, and tandem walk. On examination in February 2019, she had normal motor strength and sensation. She had normal motor strength, but decreased sensation, decreased reflexes, positive Phalen's sign, positive Tinel's sign, and abnormal gait in April, July, and October 2019. She was unable to heel, toe, and tandem walk. EMG and nerve conduction study in October 2019 showed peripheral neuropathy and right S1 radiculopathy. On consultative examination in October 2019, she had decreased range of motion and positive straight leg raising, but normal motor strength, grip strength, and gait

(Tr. 18). These findings are precisely what Plaintiff alleges the ALJ failed to consider (DN 18 PageID 716). While the ALJ did not explicitly mention this information in the subsection discussing the persuasiveness of Dr. Alhourani's medical opinion, it was still detailed in the section discussing Plaintiff's RFC. *See* Bradford v. Sec'y of Health & Hum. Servs., 803 F.2d 871, 873 (6th Cir. 1986) (ALJ's decision should be read as a whole); Walker v. Sec'y of Health & Hum. Servs., 884 F.2d 241, 245 (6th Cir. 1989) ("It is well established that judicial review of the Secretary's findings must be based upon the record taken as a whole.").

Finally, as for Plaintiff's arguments about the referral to the use of daily activities, in assessing a claimant's residual functional capacity, the Administrative Law Judge must necessarily

consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. A plaintiff's level of daily activity is a factor which the Administrative Law Judge may consider in determining the extent to which pain is of disabling severity. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Hum. Servs., 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.). When discussing Dr. Alhourani's opinion, the ALJ noted Plaintiff "engages in daily activities that are not consistent with the extent of Dr. Alhourani's limitations" (Tr. 21). Earlier in the determination, the ALJ commented that Plaintiff "reported a wide array of daily activities, including caring for her personal needs, caring for pets, preparing microwave meals, driving, shopping, performing household chores with breaks, doing yard work, and handling her own medical care" (Tr. 19).

However, level of daily activity is not the only consideration. Other considerations include the frequency that Plaintiff has sought treatment for the allegedly disabling impairments, 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . .," 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); and thee medication used to alleviate the alleged pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). All of these were considered in determining whether Dr. Alhourani's opinion, which relied upon Plaintiff's self-reported abilities, was consistent with the medical evidence (Tr. 21). As discussed above, the ALJ conducted a thorough analysis of the medical record to determine the persuasiveness of Dr. Alhourani's opinion and considered this opinion, along with all the others

in the record, to craft an appropriate RFC. Reading the ALJ's determination as a whole, the ALJ noted where the medical records and Plaintiff's statements supported or undercut Dr. Alhourani's opinion and, as a result, found the opinion to be not fully persuasive. *See* Bradford v. Sec'y of Health & Hum. Servs., 803 F.2d 871, 873 (6th Cir. 1986) (ALJ's decision should be read as a whole); Walker v. Sec'y of Health & Hum. Servs., 884 F.2d 241, 245 (6th Cir. 1989).

Therefore, while Plaintiff may have sought a finding that Dr. Alhourani's opinion was more persuasive and required greater RFC limitations, the ALJ's determination of the persuasiveness of Dr. Alhourani's medical opinion is supported by substantial evidence and comports with applicable law. As such, Plaintiff is awarded no relief under this challenge.

## Challenge to Physical RFC

1. Arguments of the Parties

Plaintiff contends that "[t]he ALJ is clearly assigning additional limitations [to the RFC] based on his own review of the medical data" (DN 18 PageID 714). "The ALJ discounts all opinion evidence of record and defines limitations based on his layman evaluation of the evidence at the time of decision" (Id. at PageID 713). However, "[t]he ALJ is simply unqualified to assign physical limitations based on his review of the positive exam findings and medical tests" (Id. at PageID 714). Instead, "[t]he evidence should be evaluated by a qualified individual when limitations are assessed" (Id.). As the RFC resulted from the ALJ acting as their own medical expert, Plaintiff claims that the RFC lacks medical source statements, which are "critical to the [RFC] finding," which renders the determination unsupported by substantial evidence (Id. at PageID 715) (quoting Childress v. Berryhill, No. 1:16-Cv-00119-HBB, 2017 U.S. Dist. LEXIS 26699, at * 10 (W.D. Ky. Feb. 24, 2017)).

Defendant disputes Plaintiff's argument by asserting that the ALJ acknowledged physical examinations, Plaintiff's ability to ambulate without an assistive device, and "evidence undercutting Plaintiff's allegations" (DN 24 PageID 746). Defendant also stated, "[T]here are no opinions from treating sources indicating that Plaintiff was more limited than opined by the reviewing doctors" (Id.). "The ALJ properly explained why he found the two reviewing doctors' findings somewhat persuasive[,]" and those reviewing physicians "are considered to be experts in the field of disability evaluation" (Id. at PageID 747) (citing Tr. 21-22; SSR 17-2p). Defendant posits that the ALJ sufficiently considered all the medical opinions in the record, appropriately determined their persuasiveness, and came to the conclusion "that evidence submitted after the previous ALJ decision did not require an updated RFC and that Plaintiff maintained the ability to perform the same range of light work as indicated in the unappealed 2017" (Id.).[4] However, the carpal tunnel syndrome and peripheral neuropathy findings were somewhat persuasive to support marginal additional limitations, which the ALJ included (Id. at PageID 747-48) (citing Tr. 16-17, 20-22; 20 C.F.R. § 404.1520c(b)(2)). Defendant also contends that the ALJ, not physicians, wields the ability and responsibility for assessing a claimant's RFC "based on all of the relevant medical and other evidence" (Id. at PageID 750) (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c); Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010)). Thus, the ALJ's determination in this aspect is supported by substantial evidence.

---

4  It is noteworthy to mention that Plaintiff mentioned that the ALJ recognized the 2017 determination (DN 18 PageID 711), but she did not explicitly discuss whether the ALJ's determinations regarding Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6) were supported by substantial evidence. However, Plaintiff asserts that "[t]he ALJ's RFC finding adopted by the Commissioner . . . is not supported by substantial evidence" as a result of the layperson interpretations (DN 18 PageID 715). Nonetheless, Defendant presented an argument supporting the ALJ's findings (see DN 24 PageID 744-45).

2. Discussion

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Moreover, in Drummond, the Sixth Circuit held that the principles of *res judicata* apply to RFC findings in the final decision of the Commissioner. *See* 126 F.3d 837, 842-43 (6th Cir. 1997). More specifically, the Sixth Circuit directed that when there is final a decision concerning a claimant's entitlement to benefits and the claimant files a new application for benefits addressing the unadjudicated period of time that proximately follows the adjudicated period of time, the Commissioner is bound by the RFC findings in that final decision absent changed circumstances. Id. Notably, the Sixth Circuit indicated that the burden is on the Commissioner to introduce substantial evidence demonstrating changed circumstances to escape the principles of *res judicata*. Id. at 843.

In light of Drummond, the Commissioner issued AR 98-4(6) directing states within the Sixth Circuit to follow that holding. In pertinent part, the Acquiescence Ruling explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with

> respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98–4(6). Although <u>Drummond</u> involved a Title II case, AR 98-4(6) recognizes that "similar principles also apply to Title XVI cases." <u>Id.</u> at n.1. Therefore, AR 98-4(6) directs that the "Ruling extends to both title II and title XVI disability claims." <u>Id.</u>

Here, the ALJ made the following <u>Drummond</u> and AR 98-4(6) finding:

> A previous Administrative Law Judge found in September 2017 that the claimant had the residual functional capacity to perform light work, but is capable of simple, routine, 1-4 step tasks, no more than occasional climbing of ramps and stairs, no more than occasional stooping, no more than frequent balancing, kneeling, crawling, or crouching, no climbing of ladders, ropes, and scaffolds, no more than frequent exposure to extreme cold, humidity, and vibration, no exposure to dangerous machinery or unprotected heights, capable of occasional contact with supervisors and coworkers but no contact with the general public, any changes should be rare and gradually introduced, and can sustain concentration, persistence, and pace for periods of two hours at a time (Exhibit C1A). The undersigned is cognizant of the provisions of AR 98-4(6) ("Drummond"), but finds that the present residual functional capacity findings are supported by the current evidence of record. The claimant's severe peripheral neuropathy is well-documented in the evidence of record, and supports additional limitations in the use of foot controls and the ability to push/pull with the bilateral lower extremities (Exhibit C17F). Since the prior decision, the claimant has also been diagnosed with carpal tunnel syndrome, which warrants a reduction to frequent handling, fingering and fingering bilaterally. The undersigned does not find that the evidence of record substantially supports further deviation from the prior Administrative Law Judge decision.

(Tr. 20-21).

15

As noted above in the footnote, Plaintiff's arguments did not explicitly discuss whether the ALJ's determinations regarding Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6) were supported by substantial evidence. Instead, the ALJ's adoption of the RFC, as a result of layperson interpretations of the medical evidence, was not supported by substantial evidence (DN 18 PageID 715). Thus, the Court will not consider arguments to the ALJ's application of Drummond and AR 98-4(6). *See* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."). The scope of the analysis below is limited to whether the ALJ's additional limitations are supported by substantial evidence.

Plaintiff's critiques of the physical RFC analysis rely heavily on the opinion of Dr. Alhourani, though Plaintiff did acknowledge that her objections to the ALJ's consideration of Dr. Alhourani's opinion would be addressed in a separate section (DN 18 PageID 711-12). As discussed at length above, the ALJ's determination of the persuasiveness of Dr. Alhourani's medical opinion is supported by substantial evidence and comports with applicable law.

Plaintiff's characterizes the ALJ's formulation of the RFC as "clearly assigning additional limitations based on his review of the medical data" (Id. at PageID 714). Moreover, Plaintiff contends that "[t]he ALJ is simply unqualified to assign physical limitations based on his review of the positive exam findings and medical tests" (Id.). However, as Defendant discussed and the Court noted above, the ALJ makes the RFC finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c); *see also* Coldiron v. Comm'r of Soc. Sec., 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a

claimant's RFC."); Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner.").

There is a difference between an administrative law judge having the authority to craft an RFC based upon the medical evidence and an administrative law judge "substitut[ing] his own medical judgment for that of a treating physician" to make independent medical findings. *See* Rhodes v. Comm'r of Soc. Sec., 2019 U.S. Dist. LEXIS 193031, at *25 (W.D. Ky. Mar. 7, 2019) (quoting Simpson v. Comm'r of Soc. Sec., 344 F. App'x 181, 194 (6th Cir. 2009)). Indeed, "ALJs must not succumb to the temptation to play doctor[.]" Id. (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Looking to the medical evidence and the ALJ's opinion, it is clear that the ALJ in the present matter did not succumb to this temptation. Throughout the determination, the ALJ thoroughly recounted Plaintiff's complaints and determined the consistency of her statements to the medical record, noted Plaintiff's alleged and diagnosed impairments and the examination records for the impairments, and extensively discussed the medical opinions in the record and noted their corresponding persuasiveness to craft the RFC (Tr. 17-22).

Plaintiff discusses how the State agency physicians "did not have the opportunity to review much of the objective evidence of record" as their review came before the visits which generated the documents (DN 18 PageID 713-14). The ALJ found the State agency opinions to be "somewhat persuasive" and still opined more restrictive limitations to compensate for Plaintiff's peripheral neuropathy and carpal tunnel syndrome (Tr. 21-22). Thus, the ALJ implicitly acknowledged the creation of new documentation of record which supported more restrictive limitations, which the State agency physicians would not have been able to review.

Considering the ALJ's determination as a whole, it is clear that the ALJ did not fall into the temptation of drafting their own independent medical findings but, instead, relied upon all the medical evidence in the record and the medical opinions to craft an appropriate RFC. *See* Bradford v. Sec'y of Health & Hum. Servs., 803 F.2d 871, 873 (6th Cir. 1986) (ALJ's decision should be read as a whole); Walker v. Sec'y of Health & Hum. Servs., 884 F.2d 241, 245 (6th Cir. 1989). Therefore, the ALJ's RFC determination is supported by substantial evidence and comports with applicable law. As such, Plaintiff is awarded no relief under this challenge.

## Challenge to Vocational Expert Testimony

1. Arguments of the Parties

Plaintiff's final argument takes issue with the vocational expert's testimony, specifically whether there is substantial evidence to support the ability to perform work that corresponds to an accurate RFC with appropriate physical and mental limitations (DN 18 PageID 718) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)). Plaintiff relies upon her previous arguments to assert that "[i]dentification of jobs to the flawed RFC finding does not provide evidence that demonstrates that other work exists in significant numbers in the national economy that Mrs. Sandlin can perform with her limitations, age, education, and past relevant work" (Id.) (citing 20 C.F.R. §§ 416.920(g), 416.960(c)). Had the ALJ used a hypothetical question utilizing the limitations imposed in Dr. Alhourani's opinion, all jobs would be eliminated (Id.) (citing Tr. 82-83).

Defendant responds to Plaintiff's claim about the vocational expert in a footnote (DN 24 PageID 743-44 n.4). In sum, Defendant characterizes this challenge as "a reformulation of her RFC argument" (Id.). "The vocational expert's testimony in response to a hypothetical question

accurately reflecting Plaintiff's impairments constitutes substantial evidence in support of the Commissioner's decision" (Id.) (citing Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)). As such, "the Commissioner's decision, relying on the [vocational expert]'s testimony to find that Plaintiff was not disabled, should be affirmed" (Id.).

2. Discussion

As discussed at length above, the ALJ's determination as to Dr. Alhourani's opinion and the physical RFC determination are supported by substantial evidence. Thus, the hypothetical questions posed to the vocational expert utilized an accurate RFC (*see* Tr. 76-83). Plaintiff's contentions rest upon unsubstantiated objections to the ALJ's determination. Certainly, as Plaintiff suggests, "[v]ocational expert testimony identifying jobs is not substantial evidence to support the ability to perform work unless the hypothetical question which elicited identification of the jobs accurately portrays the physical and mental limitations" (DN 18 PageID 718) (citing Varley v. Sec'y of Health & Hum. Servs., 820 F.2d 777, 779 (6th Cir. 1987)).

If the ALJ comes forward with evidence of job availability, Plaintiff must rebut that she can perform the identified job. Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein. Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*). Here, the vocational expert identified a significant number of jobs that Plaintiff could perform, which is the legal standard that the Commissioner must meet (Tr. 80-82). *See e.g.,* McCormick v. Sec'y of Health & Human Servs., 861 F.2d 998, 1000-02 (6th Cir. 1988). The jobs proffered were drawn from an RFC that was properly supported by substantial evidence.

As Plaintiff has not rebutted the evidence of job availability, the ALJ's reliance on this information in determining that Plaintiff was not disabled is supported by substantial evidence. Therefore, Plaintiff is awarded no relief under this challenge.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenge.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

H. Brent Brennenstuhl
United States Magistrate Judge

March 14, 2022

Copies:   Counsel of Record